*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

JOHNNY PAULS PAULS,

      Defendant-Appellant.

UNPUBLISHED
June 27, 2024

No. 363539
Macomb Circuit Court
LC No. 2019-001287-FC

Before: MARKEY, P.J., and SWARTZLE and MARIANI, JJ.

PER CURIAM.

Defendant sexually abused his stepdaughter over a number of years. A jury convicted defendant of three counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(2)(b), and one count of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(2)(b). The trial court sentenced defendant to concurrent prison terms of 25 to 57 years for each CSC-I conviction and 9 to 15 years for the CSC-II conviction. We affirm.

## I. BACKGROUND

Defendant was convicted of sexually abusing his former stepdaughter, DS, in multiple incidents, from when DS was approximately eight years old until she was 11 years old. DS first disclosed the abuse at school when she was 16 years old. Before the trial began, defense counsel sought DS's school and medical records. The prosecutor objected on the basis that, under MCL 330.1750, the information was privileged. The trial court denied defendant's request, finding that the information was privileged and that defendant had not articulated a basis to believe that the requested records included exculpatory information.

At trial, DS testified that defendant was her stepfather beginning when she was only a few months old. DS testified that the first incident occurred when her mother was at work. DS and defendant had been lying on the couch watching television, when defendant pulled down DS's pants and underwear and touched her vagina. DS additionally described an incident in which defendant penetrated DS's vagina with his pinky; one incident in which defendant made DS put her mouth on his penis; and one incident in which defendant made DS lick his nipples while

-1-

defendant masturbated until he ejaculated. The abuse stopped when defendant and DS's mother divorced and defendant moved out of the family home.

DS did not tell anyone about the sexual abuse while it was occurring, and she testified that she had been too young to understand what was going on. Further, DS had trusted defendant and she continued to visit with defendant after he moved out because "[h]e was basically the only dad that [she] had." DS testified that on one visit to see defendant in Florida, she was lying on an air mattress, watching a movie with defendant, and defendant tried to put his hands down her pants to touch her vagina. DS "flipped over very quickly" so that defendant would remove his hand.[1]

DS ultimately disclosed the abuse to a school counselor after a psychology class in which they were discussing "sensitive subjects like rape" that triggered her memories. The school counselor contacted DS's mother, who came to the school. DS had never spoken with her mother about what defendant had done before DS disclosed to her counselor.

When cross-examining DS, defense counsel attempted to admit an e-mail that DS had written to defendant before she disclosed the abuse, but the prosecutor objected on the basis of hearsay. Defense counsel argued that the e-mail showed DS's state of mind about her relationship with defendant and was not offered for the truth of the matter asserted. The trial court determined that it was inadmissible at that time. Defense counsel extensively cross-examined DS about the e-mail, without its admission. DS testified that she had expressed in the e-mail to defendant that she was frustrated with their relationship, including that she felt like she was losing her relationship with defendant and that his new girlfriend was becoming more important to him than DS was.

Defendant did not testify or present any other evidence at trial. The trial court later addressed the e-mail, and defense counsel stated that "anything in that email that [he] thought was beneficial to [defendant]," DS acknowledged during her cross-examination. The jury found defendant guilty of three counts of CSC-I and one count of CSC-II.

Defendant subsequently moved for a new trial and requested a *Ginther*[2] hearing, arguing that his trial counsel had been ineffective. Defendant specifically faulted counsel for not calling witnesses on his behalf; not cross-examining DS about her credibility; not providing evidence of DS's mother's "motive and intent to harm Defendant"; failing to offer the e-mail into evidence even after the trial court re-raised the issue, when the e-mail included DS's statement that defendant "always used to teach [her] things, but it is [her] turn now"; and not investigating the curriculum used in DS's classes at the time she disclosed the sexual abuse.

The trial court conducted a hearing, at which several witnesses testified. First, Harith Kappouta, defendant's brother-in-law, testified that when DS and her mother came to speak with him about the allegation, DS would turn around to ask her mother for validation about what she was saying, and Kappouta felt that DS's mother was coaching her. Further, DS had told Kappouta that she loved defendant like a father, and that defendant had brushed her leg, but there was no

---

[1] This uncharged conduct was admitted as other-acts evidence under MCL 768.27a.

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

penetration. Kappouta testified that defendant was a "good guy" and that Kappouta had spoken with defendant's first counsel, Cecil St. Pierre, Jr., about the nature of Kappouta's proposed testimony.

Tracey Hursey, defendant's ex-wife before DS's mother, also testified at the hearing. Hursey testified that defendant was an "upstanding person." Hursey explained that she had met with DS and her mother, who told her about the allegations. DS appeared calm and told Hursey that she had not remembered the abuse until school. Hursey had not spoken with either of defendant's counsel about the proposed testimony, but she had written a statement.

Shannon Harrison, defendant's daughter-in-law, testified that defendant was a "good person." Harrison testified that she had seen defendant and DS together, and there was "nothing out of the ordinary, just a normal father relationship." DS's mother told Harrison about DS's allegations against defendant, and DS was "very quiet" during the conversation. DS told Harrison that there was no "intercourse," but defendant had "touched [her] down there." Harrison testified that one of defendant's attorneys had contacted her, and she had written a statement for defendant.

Each of defendant's two trial counsel also testified at the *Ginther* hearing. St. Pierre had represented defendant until they had completed two days of preliminary-examination testimony, at which point St. Pierre withdrew. Stephen Rabaut then represented defendant.

Rabaut testified that he had spoken with defendant and then spoke to a couple potential witnesses. Rabaut testified that, in his preparation for trial, he had spoken with Kappouta. Rabaut had reached out to Harrison, but Harrison did not call him back. Rabaut decided not to issue a subpoena to Harrison because it was defendant's theory that DS's mother "wanted to destroy his character," but Rabaut did not think that the theory was viable.

Rather, Rabaut explained that the defense theory for trial was that DS was upset with defendant for no longer acting as a father-figure to her, so she made up the sexual-abuse allegations. Rabaut explained that he had extensively used the contents of the March 2018 e-mail with DS during her cross-examination and elicited her acknowledgment of statements in the e-mail.

With respect to the potential witnesses discussed during the *Ginther* hearing, Rabaut further testified that he did not issue any subpoenas to them because he did not think that any would be beneficial. Rabaut had never seen Hursey's statement, and defendant did not mention her to Rabaut, nor was her name on the witness list. Rabaut also did not call Kappouta, or anyone else, as character witnesses because Rabaut and defendant had decided not to call any character witnesses. Rabaut thought they "had done quite well with the complainant." In Rabaut's and Kappouta's conversation, Kappouta did not mention his observations of DS's demeanor when she was disclosing the allegation or DS's comments to Kappouta about the lack of penetration.

After hearing the evidence, the trial court denied defendant's motion. Defendant filed a second motion for a new trial or resentencing, arguing that the trial court improperly admitted the other-acts evidence and that trial counsel was ineffective for failing to request a limiting instruction with respect to other acts of sexual abuse admitted into evidence under MCL 768.28a. Defendant also challenged the validity of his 25-year minimum sentences.

The trial court again denied defendant's motion, but it first noted that there was "no reasonable basis" for defense counsel not to request the limiting instruction. The trial court also found, however, that the instruction would have provided limited "protection to the defendant in terms of how the members of the jury are to assess the evidence." Accordingly, the trial court found that there was no reasonable probability that the trial counsel's failure to request the instruction altered the outcome of the proceedings.

Defendant now appeals.

## II. ANALYSIS

### A. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant's right to counsel is guaranteed by the United States and Michigan Constitutions. US Const, Am VI; Const 1963, art 1, § 20. This right includes the right to the effective assistance of counsel. *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007). "Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law." *People v Solloway*, 316 Mich App 174, 187; 891 NW2d 255 (2016). This Court reviews for clear error a trial court's findings of fact and reviews de novo questions of constitutional law. *Id*. at 188. A finding of fact "is clearly erroneous if this Court is left with a definite and firm conviction that the trial court made a mistake." *People v Abcumby-Blair*, 335 Mich App 210, 227-228; 966 NW2d 437 (2020) (cleaned up). When a *Ginther* hearing has not been held on an ineffective-assistance claim, this Court's review is limited to mistakes apparent on the record. *Solloway*, 316 Mich App at 188. In this case, a *Ginther* hearing was held related to most of defendant's ineffective-assistance claims. Defendant later filed a second motion, however, raising the issue of a limiting instruction, and the trial court denied defendant's request for a second *Ginther* hearing. Therefore, review of that issue is limited to mistakes apparent on the record. See *id*.

To establish a claim of ineffective assistance of counsel, defendant must show that: (1) defense counsel's performance was deficient; and (2) the deficient performance prejudiced the defense. *People v Taylor*, 275 Mich App 177, 186; 737 NW2d 790 (2007). Defense counsel's performance is deficient if it fell below an objective standard of professional reasonableness. *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). Defendant was prejudiced if it is reasonably probable that, but for the deficient performance, the result of the proceeding would have been different. *Id*. There exists a strong presumption that a defense counsel's performance constituted sound trial strategy. *Id*. at 667-668.

First, defendant argues that trial counsel was ineffective for failing to investigate and call Kappouta, Harrison, and Hursey as witnesses at trial. "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, and this Court will not substitute its judgment for that of counsel regarding matters of trial strategy." *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002). Defense counsel must, however, undertake reasonable investigations or make a reasonable decision that a particular investigation is unneeded. *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012).

-4-

The record does not indicate that trial counsel's decisions not to call Kappouta, Harrison, or Hursey were the result of a less than thorough and complete investigation. Counsel discussed potential witnesses with defendant, and they specifically discussed Kappouta and Harrison, but, according to counsel, nobody told him about Hursey. We see no basis in the record to fault counsel for failing to uncover or call this unidentified witness.

Defense counsel testified that he personally spoke to Kappouta regarding the potential substance of his testimony, and the record does not support a finding that counsel failed to investigate adequately what information Kappouta could offer. Further, defense counsel testified that the information he received from Kappouta was focused on the relationship between DS's mother and defendant, and counsel did not find that it would be helpful to explore that line of inquiry at trial. Counsel denied that Kappouta ever mentioned that DS had told him that the incident with defendant did not involve penetration or that Kappouta told counsel anything about DS's demeanor when she made her disclosure. Although Kappouta testified to the contrary on several of these matters, credibility decisions are for the trial court to make. See *People v Cartwright*, 454 Mich 550, 555; 563 NW2d 208 (1997). Defendant has failed to overcome the presumption that counsel's decision not to call Kappouta was based on sound trial strategy. See *Jordan*, 275 Mich App at 667-668.

Further, defendant has not established a reasonable probability that the failure to call Kappouta and Hursey as witnesses altered the outcome of the proceedings. Their testimony at the *Ginther* hearing did not suggest that they would have been able to meaningfully undermine DS's allegations or her credibility.

Defendant argues on appeal that Harrison's testimony was crucial for the jury to hear when determining DS's credibility. Defense counsel tried to contact Harrison, but was unable to reach her. Further, Harrison's proposed testimony does not detract from DS's testimony, in which DS admitted to having complicated feelings about defendant and spending time with him after the abuse. Defendant has, therefore, again failed to establish that defense counsel was ineffective.

Defendant has likewise failed to establish that defense counsel was ineffective for failing to seek admission under MRE 803(3) of the e-mail that DS wrote to defendant. MRE 803(3) provides that "[a] statement of the declarant's then-existing state of mind or emotional, sensory, or physical condition (such as intent, plan, motive, design, mental feeling, pain, or bodily health)" is not excluded by the rule against hearsay.

The record in this case shows that defense counsel sought to admit the e-mail, but the trial court sustained the prosecutor's hearsay objection. Defense counsel specifically sought to admit the e-mail, not as proof of the truth of the matter asserted, but, instead, to show DS's then-existing state of mind, although he did not specifically identify MRE 803(3) at trial. Defense counsel also had the opportunity to question DS regarding her statements in the e-mail, and DS acknowledged that the e-mail reflected how she felt when she wrote it. Defense counsel did not further pursue admission when the trial court again raised the matter, but, by that time, defense counsel had already extensively cross-examined DS about the statements, and she had largely acknowledged the statements. Defendant has not established that trial counsel's handling of the e-mail was objectively unreasonable under the circumstances. See *Jordan*, 275 Mich App at 667. Further, counsel was able to cross-examine DS about her statements and elicit her admissions that the

-5-

statements reflected how she felt at the time she wrote the e-mail; defendant points to specific statements in the e-mail that were not expressly discussed, but he does not demonstrate that they would have meaningfully added to the cross-examination, let alone that there was a reasonable probability that their inclusion would have altered the outcome. See *id*.

Next, defendant argues that defense counsel did not otherwise adequately cross-examine DS. Counsel elicited from DS that she had a close relationship with defendant and that she continued to visit him after he and her mother divorced. Counsel also elicited DS's admission that when defendant started a new romantic relationship, DS was disappointed by the impact on her relationship with defendant and that she was frustrated with him at the time that she disclosed the abuse to her counselor. DS admitted that she felt deserted by defendant and that it was difficult for her not to see defendant as often as she had before. Counsel also cross-examined DS about her statements in her e-mail to defendant and her feelings of anger and rejection because of the relationship ending.

Although counsel did not question DS about the details of the sexual-abuse allegations, counsel reasonably may have decided not to explore the details of the allegations when the defense theory was that DS fabricated the allegations out of her anger toward defendant. The record reflects that counsel focused his efforts on questioning DS about the nature of her relationship with defendant and her feelings and mindset when the relationship ended, in accordance with the defense theory that DS made up all the allegations. The record does not establish that trial counsel's questioning of DS was objectively unreasonable or that defendant was prejudiced by counsel's questioning.

Finally, defendant argues that trial counsel was ineffective for failing to request a limiting instruction with regard to the other-acts evidence introduced at trial. As the trial court noted at the hearing on defendant's second motion for a new trial, there was no reasonable basis for defense counsel not to request a limiting instruction here. Defendant has not established, however, that he was prejudiced by this. As the prosecutor argues on appeal, the testimony about Florida included DS's allegation that defendant attempted to touch her, and she was clear that defendant did not penetrate her vagina at that time. Compared with the charged conduct, the evidence of the Florida incident was not particularly salacious or outrageous. On review of the entire record, there is no basis to believe that the lack of the limiting instruction about this specific testimony impacted the outcome of the proceedings when the jury found defendant guilty of all four offenses; indeed, defendant concedes as much. Accordingly, there is no reasonable probability that the failure to request the limiting instruction altered the outcome of the trial.

### B. *IN CAMERA* REVIEW

Defendant next argues that the trial court abused its discretion by denying his motion to review DS's school-counseling records. This Court reviews for an abuse of discretion a trial court's decision whether to allow discovery in a criminal case. See *People v Stanaway*, 446 Mich 643, 680; 51 NW2d 557 (1994). A court abuses its discretion when its decision falls outside the range of principled outcomes. *People v Lane*, 308 Mich App 38, 51; 862 NW2d 446 (2014). Whether a privilege is applicable is a question of law that this Court reviews de novo. *In re CADP*, 341 Mich App 370, 379; 990 NW2d 386 (2022). Statutory interpretation is also a question of law that this Court reviews de novo. *Id*.

In a criminal proceeding, a defendant has the right to present a defense, and that right includes the right to access exculpatory evidence. *People v Warner*, 339 Mich App 125, 150; 981 NW2d 733 (2021). A defendant does not, however, generally have the right to discover privileged records. *Id*. "[T]here is no right to discover information or evidence that is protected from disclosure by constitution, statute, or privilege, including information or evidence protected by a defendant's right against self-incrimination, except as provided in subrule (2)." MCR 6.201(C)(1). MCR 6.201(C)(2) provides that when a "defendant demonstrates a good-faith belief, grounded in articulable fact, that there is a reasonable probability that records protected by privilege are likely to contain material information necessary to the defense, the trial court shall conduct an *in camera* inspection of the records." See also *Stanaway*, 446 Mich at 649-650.

In this case, the prosecutor argued that the requested information—DS's school-counseling records—was privileged under MCL 330.1750(1). Defendant does not dispute that DS's school-counseling records were privileged from disclosure under this statute. Defense counsel clarified in the lower court that defendant was only seeking records from the counselor to whom DS initially disclosed the allegations, but because disclosure of the records was protected by statute, defendant did not have a right to discover the records. MCR 6.201(C).

To obtain an *in camera* review, defendant was required to establish a reasonable probability that the privileged records were likely to contain material information necessary to his defense. MCR 6.201(C)(2); *Stanaway*, 446 Mich at 649-650. Defendant's mere belief that the records might contain relevant information was insufficient to demonstrate a good-faith belief, grounded in articulable fact, that the protected records contained material information integral to his defense. As in *Stanaway*, 446 Mich at 681-682, when the defendant asserted that the records *may* show a prior inconsistent statement, but did not offer "any specific articulable fact" showing that the records were necessary to his defense, defendant here did not overcome the privilege protecting DS's records.

Defendant argues on appeal that he would have a right to see DS's statement had it been made to a police officer, but a conversation with a counselor is specifically privileged in a way that a report to a police officer is not. In any event, that argument does not provide any specific articulation of why these records were necessary to his defense. Accordingly, the trial court did not abuse its discretion by denying defendant's request for production of the information or an *in camera* review. See *id*. at 682.

## C. DEFENDANT'S SENTENCES

Defendant additionally challenges the trial court's imposition of mandatory 25-year minimum sentences under MCL 750.520b(2)(b), which provides that a CSC-I conviction by a defendant "17 years of age or older against an individual less than 13 years of age" is punishable "by imprisonment for life or any term of years, but not less than 25 years." Defendant does not dispute that he was more than 17 years old and DS was less than 13 years old at the time of the sexual abuse. Defendant argues, however, that the trial court erroneously interpreted the statute as requiring a mandatory *minimum* sentence of 25 years. According to defendant, the statute should be interpreted as only establishing a mandatory floor of 25 years for the maximum sentence.

This Court recently addressed and rejected this same argument in *People v Roy*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 359894); slip op at 2. This Court held, after reviewing the plain and unambiguous language of the statute, precedent, and legislative analysis, that the statute requires a mandatory 25-year minimum sentence for individuals convicted of CSC-I who were 17 years of age or older and committed the offense against an individual under the age of 13. *Id.*; slip op at 7. Accordingly, the trial court did not err by imposing mandatory 25-year minimum sentences for defendant's CSC-I convictions.

## D. CUMULATIVE ERROR

Finally, defendant argues that the cumulative effect of the errors deprived him of a fair trial. "The cumulative effect of several errors can constitute sufficient prejudice to warrant reversal even when any one of the errors alone would not merit reversal, but the cumulative effect of the errors must undermine the confidence in the reliability of the verdict before a new trial is granted." *People v Dobek*, 274 Mich App 58, 106; 732 NW2d 546 (2007). In this case, we have concluded that the record does not support defendant's claim that trial counsel failed to conduct an adequate investigation, that counsel's decisions not to call witnesses were objectively unreasonable, or that counsel was deficient in his handling of DS's e-mail or testimony. Further, defendant failed to make the necessary threshold showing to require an *in camera* review of DS's school counseling records, and the trial court did not err by determining that MCL 750.520b(2)(b) required mandatory minimum sentences of 25 years. "Absent the establishment of errors, there can be no cumulative effect of errors meriting reversal." *Id.* The only error defendant has established is counsel's failure to request a limiting instruction as to the other-acts evidence, and as already discussed, defendant has not shown prejudice warranting relief on that basis.

Affirmed.

/s/ Jane E. Markey
/s/ Brock A. Swartzle
/s/ Philip P. Mariani

-8-